WR-71,258-03,04
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/5/2015 5:00:00 PM
Accepted 6/8/2015 8:16:08 AM
ABEL ACOSTA
CLERK

Nos. WR-71,258-03 & WR-71,258-04

## IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS, AT AUSTIN

RECEIVED
COURT OF CRIMINAL APPEALS
6/8/2015
ABEL ACOSTA, CLERK

**Ex parte Daniel Edward Murray**

Applicant

*Habeas Corpus* Proceeding under Article 11.07, *et seq.*, C.Cr.P., in Case Numbers W366-80173-06-HC2, and W366-80248-05-HC2, from the 366th District Court of Collin County

# Motion for Stay of Proceedings And Remand for Evidentiary Hearing

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW, Daniel Edward Murray, Applicant in the above styled and numbered cause, by and through his undersigned lead counsel, John G. Jasuta, and respectfully files this "Motion for Stay of Proceedings And Remand for Evidentiary Hearing," and would show the Court that on May 12, 2015, the habeas court entered its findings of fact and conclusions of law, which were subsequently forwarded to this Court by the District Clerk of Collin County and received by the Clerk of this Court on May 28, 2015.

## I

Applicant asserts that the findings and conclusions entered by the trial court demonstrate the need for confrontation and cross examination and a rejection of reliance on prior testimony and affidavits, alone.  Examples are found throughout:

## A

As to Findings 1 through 10, they are incomplete and ignore much of the proffered evidence.  The trial court finds that attorney John Hardin's prior testimony was credible and that it shows that he advised his client to seek alcohol counseling prior to trial and that Applicant was at fault for failing to follow this advice.  The series of findings related to this incident are flawed because they fail to take into account or explain in any manner that counsel admitted that he did not investigate the facility and did not know what was offered.  Additionally, those findings fail to take into account the fact that Hardin in no manner assisted his client in this endeavor from investigating the facility prior to making the blind recommendation to advising his client of the strictures of the statutes relating to treatment and the privileges involved.

The findings fail to explain how sending ones client blindly into a treatment module deemed inappropriate by an expert in the

area of the charged offenses constitute anything but deficient conduct.

B

Findings 15-22 also illustrate the flawed nature of the findings and the requirement for a hearing. Once again, in Finding 17, reliance is had on the testimony of attorney Hardin who is quoted as stating that he made a decision to forego the services of a psychologist due to his "view" that the Sante treatment program would fill that role. This is so despite the uncontradicted evidence that Hardin did nothing to investigate the facility and its offerings prior to making the, frankly uninformed, recommendation that Applicant seek treatment at it, and then made the appropriate recommendation too late to be of any use.

In Finding 21 the *habeas* court states that Applicant has not explained how the outcome would have been different all while quoting the Finstein affidavit as to one point but failing to recognize that Finstein also swore that Applicant would have been an ideal candidate for probation. Applicant would submit that the *habeas* court failed to give due consideration to the Finstein affidavit, without rejecting its credibility, demonstrating a need for

actual testimony and credibility choices made upon actual courtroom evidence.

## C

Those findings regarding the plea bargain, numbered 27 through 41 are also flawed and demonstrate a need for an evidentiary hearing. The structure of the plea bargain as it was explained by counsel prior to entry of the pleas is an important fact which is unanswered and which is important to complete resolution. Applicant's statement that he had, indeed, been sentenced to thirty and twenty years does not resolve the issue.

## D

Findings numbered 42 through 52, relating to the allegation of ineffective assistance of counsel for failure to prepare for a punishment hearing, are particularly flawed because they bootstrap and justify counsel's failure with his failure. Applicant had a right to a timely investigation and preparation of a defense, including as to punishment issues. Finding 49, that counsel's failure to call punishment witnesses was not surprising given the entry into the plea bargain ignores the underlying allegation, that counsel's deficient conduct in failing to prepare in advance for a punishment hearing by speaking with potential witnesses and

then evaluating the strength of any potential punishment case prior to counseling his client to accept the plea bargain offered. In so ignoring the underlying allegation the particular finding is typical of all of the findings relating to this issue.

Each of the persons who could have testified for Applicant were never contacted by defense counsel, despite counsel's investigator's statement that he called the names provided. The *habeas* court's finding that the investigator was credible ignores the overwhelming evidence that the "investigation" as to punishment was woefully inadequate. The *habeas* court does not find Applicant's proffered evidence incredible, it simply ignores it.

The duty to investigate does not fall on the client, as the *habeas* court would have it, but on the lawyer, who did not make any effort beyond having his office manager make a few phone calls. This failure to take into account the underlying allegation of ineffective assistance of counsel in failing to be adequately prepared to truly represent his client in deciding whether to plead guilty or not informs the entry of all of the findings relating to the plea bargain and demonstrates the need for an evidentiary hearing in which counsel can detail his investigative actions.

## II

Applicant asserts that the Findings entered by the trial court, along with the State's Answers upon which they were based, demonstrate the presence of "controverted, previously unresolved facts material to the legality of the applicant's confinement." Applicant is entitled to resolution of the issue through one of the several methods mentioned in Article 11.07, § 3(d), C.Cr.P. The only appropriate and effective manner of resolution is an evidentiary hearing.

## III

Much has been written about the necessity of confrontation in the search for truth, with a recognition that the courtroom is that place where that search is conducted.

> The courtroom is the crucible of the law, where the fire of litigation tests the intellectual and political forces that inform social policy. Discovery - the process by which litigants identify and assemble their evidence - provides the fuel for the fire.

James Gibson, A Topic Both Timely and Timeless, 10 RICH. J.L. & TECH. 49 (2004). Our literature and case law are replete with references to the "crucible" of the courtroom.

Members of the Supreme Court of the United States use it often. Regarding the Confrontation Clause, for example, the Court recently wrote:

> To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. . . . Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes."

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 (2009). Along that line, in one its most landscape-changing Confrontation Clause cases, the Court wrote:

Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." Certainly none of the authorities discussed above acknowledges any general reliability exception to the common-law rule.

Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there

could be little dissent), but about how reliability can best be determined. Cf. 3 Blackstone, Commentaries, at 373 ("This open examination of witnesses . . . is much more conducive to the clearing up of truth"); M. Hale, <u>History and Analysis of the Common Law of England 258</u> (1713) (adversarial testing "beats and bolts out the Truth much better"). ***Crawford v. Washington***, 541 U.S. 36, 61-62 (2004).

Similarly, more than forty years ago, Justice Marshall, joined by Justices Douglas and Brennan, wrote, albeit in dissent, that "In our system of justice, the right of confrontation provides the crucible for testing the truth of accusations . . .." ***Arnett v. Kennedy***, 416 U.S. 134, 214-215 (1974)(Marshall, J., dissenting). Also, seventy years ago, Justice Murphy, defending the right of the Associated Press to disseminate the news, wrote generally that evidence, unless undisputed, "should be thoroughly tested in the crucible of cross-examination and counter-evidence." ***Associated Press v. United States***, 326 U.S. 1, 57-58 (1945)(Murphy, J., dissenting).

## IV

The role of the trial court in *habeas corpus* matters brought pursuant to Art. 11.07, § 3, is that of the fact-finder. The ultimate

decision is to be made by the Court of Criminal Appeals, guided by the informed findings and recommendation of the trial court. Applicant asserts that the only way the Court can properly assist the Court of Criminal Appeals in its investigation and truly resolve the question of whether Applicant is able to show counsel's ineffective representation and an entitlement to relief is to schedule a live evidentiary hearing, at which time Applicant would be able to introduce live testimony supporting his claims.

V

Applicant would suggest that, due to the time required to obtain witnesses and ensure their presence, as well as to prepare for a full and complete hearing, the hearing be scheduled no less than sixty (60) days from the date of the setting of the hearing.

## Prayer

WHEREFORE PREMISES CONSIDERED, Appellant prays this Honorable Court to grant this motion in all things and remand the cause to the *habeas* court with instructions to hold an evidentiary hearing.

Respectfully submitted,

_____

**John G. Jasuta**
Attorney at Law
1801 East 51st Street, Suite 365474
Austin, Texas 78723
eMail: lawyer1@johngjasuta.com
Tel. 512-474-4747
Fax: 512-532-6282

State Bar No. 10592300
Attorney for Applicant
Daniel Edward Murray

## Certificate of Compliance and Delivery

This is to certify that: (1) this document, created using WordPerfect™ X7 software, contains 1,710 words, excluding those items permitted by Rule 9.4 (i)(1), Tex.R.App.Pro., and complies with Rules 9.4 (i)(2)(B) and 9.4 (i)(3), Tex.R.App.Pro.; and (2) on June 5, 2015, a true and correct copy of the above and foregoing "Motion for Stay of Proceedings And Remand for Evidentiary Hearing" was transmitted via the eService function on the State's eFiling portal, to Amy Sue Melo Murphy (asmurphy@co.collin.tx.us), counsel for the State of Texas.

_____

**John G. Jasuta**